## Reichenbach *versus* McKean.

1. The sheriff sells only the title of the defendant in an execution, and the real owner, besides trespass against the sheriff, may maintain replevin or trover against his vendee.

2. In the case of a pawn or pledge there is a special property in the pawnee. It is liable to be sold on an execution against the pawnor but subject to the rights and interests of the pawnee.

3. The taking of the property out of the possession of the pawnee by a sheriff's sale does not divest his property, and is in no sense a relinquishment of his lien, and a bona fide purchaser from the sheriff's vendee takes it subject to said lien.

October 13th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1880, No. 258.

Replevin by William McKean against John Reichenbach, to recover or enable plaintiff to retain possession of two mules.

It appeared that John D. Negley owed McKean $215, and to secure him against loss, put into his possession the mules in question. Subsequently, a creditor of Negley obtained judgment

[Reichenbach *v.* McKean.]

against him, and issued execution and levied upon the mules then running in the fields of McKean. Before they were sold a notice was given by McKean and read to the bidders by the deputy sheriff, stating the circumstances under which the mules were given by Negley to McKean, that they were to secure the payment of the $215; and that he had a lien on them to that extent. The mules were sold to one Smith, who subsequently sold them to defendant.

The other material facts will be found in the following portions of the charge of the court below.

" After this purchase by Reichenbach, McKean issued his writ of replevin and gave bonds to the sheriff in accordance with the law, that the property should be surrendered or its value, in case it would be discovered that he had not the title to these mules. The mules were then surrendered to Mr. McKean, in whose possession they now are. The question now is : Did the mules belong to McKean or did they belong to the defendant in this action ? For whilst the action is brought by McKean, he in reality having the mules in his possession under this bond, is the defendant in the action practically, Reichenbach selling and received damages from McKean for their taking and detention by him, McKean.

" Reichenbach alleges that the mules having been taken from him by McKean, he is prejudiced. 1. To the extent of $140, the value of the mules. 2. He is prejudiced and damaged to the extent of $150 or thereabouts, for hire of horses that he was compelled to assume, in order to carry on his business as a brewer, whilst these mules were in the possession of McKean.

" While this case was under discussion, we endeavored to obtain from counsel some authority as to McKean's right to these mules at law. For it was with us a question whether having possession of the same merely for a security or pledge for a debt, he had in law such a right as would entitle him to hold them against a creditor. Our impression was that he had no such right, that his property in the mules was of such a peculiar and special character that you were bound to assess damages for the defendant. I am now of opinion, upon reflection, and hearing the authorities, that this position is incorrect; and that a party holding goods in pledge as a security for a debt and having them in possession, has such a right to these goods as would entitle him to a verdict at your hands, and I therefore instruct you, as a matter of law [that if you find that the goods were delivered to McKean by Negley to be kept by him until this amount of $215 was repaid to him by Negley, that the creditor of Negley stands in no higher or better position than Negley himself; that unless he paid or offered to pay the debt or claim for which they were pledged, Negley himself could not have taken these mules; that no sheriff's possessor was in any better position than Negley himself; that is, if you find these to be the facts your verdict ought to be for the plaintiff."]

14 Norris—28

[Reichenbach *v.* McKean.]

Verdict for plaintiff, when defendant took this writ and alleged that the court erred in the above portion of the charge in brackets.

*Frederick Luty,* for plaintiff in error.—Defendant was a bona fide purchaser for a valuable consideration without knowledge or notice of the sheriff's sale. Punishment for the neglect of Mc-Kean, or the fault of the sheriff, should not be visited upon Reichenbach: Sinclair *v.* Healy, 4 Wright 417. McKean failed to establish an exclusive right in himself to possess and control the property at the time he issued his writ, and the plea of property imposed upon him the necessity of establishing his title, and, therefore, the court below erred in its instruction to the jury: Reinheimer *v.* Hemingway, 11 Casey 438. Surrendering the mules to the sheriff, the lien of McKean was released, and he could not maintain the action of replevin against an innocent bona fide purchaser, but must look to the sheriff for his remedy if he was injured: L. S. & M. S. Railway Co. *v.* Ellsey, 4 Norris 283.

*Carnahan & Miller,* for defendant in error.—The purchaser took no title at the sheriff's sale, but only acquired the right to have possession of the property by paying off the debt of Negley and interest, for the security of which McKean held possession of the mules on his own premises: Sect. 23, Act June 16th 1836, Pamph. L. 764. Whether the purchaser was ignorant or otherwise of the sheriff's right to sell, the right of property may be had in an action against the sheriff's vendee. Replevin lies against such vendee to recover chattels wrongfully taken in execution and sold: Ward et al. *v.* Taylor, 1 Bart. 238. The evidence showed that the right of possession as well as the actual possession of the mules was in McKean.

The judgment of the Supreme Court was entered October 25th 1880,

PER CURIAM.—The sheriff sells only the title of the defendant in the execution, and the real owner, besides trespass against the sheriff, may maintain replevin or *trover against his vendee. In the case of a pawn or pledge, there is a special property in the pawnee. It is liable to be sold on an execution against the pawnor but subject to all and singular the rights and interests of the pawnee: Act of June 16th 1836, Pamph. L. 1836. The taking of the property out of the possession of the pawnee was a wrongful act which could not divest his property. His parting with the possession was in no sense a relinquishment of his lien. The pawnor's title was not infected with any fraud or secret trust, so as to give to a bona fide purchaser from him any better right than he had himself, and the sheriff could convey no better title than the pawnor himself could.

Judgment affirmed.