# J. H. & C. K. Eagle, Inc., Appellant, *v.* Kunkle.

*Bailment—Sale of pledged goods—Implied notice of pledge— Possession—Inquiry—Landlord's warrant—Waiver of pledge—Act of June 16, 1836, P. L. 761.*

1. A bailor may sell the subject-matter of the bailment, subject to the special property in the bailee.

2. If by agreement, the subject-matter is to remain in the pledgor's possession, it binds all claiming under him, except purchasers without notice; but where there is possession of the pledged goods in the pledgee, an implication of notice of the pledge arises.

3. If the pledgee claims dominion over the property, and his status can be ascertained by inquiry, another claiming the property is bound to make such inquiry, if he desires to be advised.

4. Under the Act of June 16, 1836, P. L. 761, a sale of a pledgor's right of redemption, carries the right to the property subject to the interest of the pledgee, who may maintain trover or replevin where the property is wrongfully taken from his possession under execution.

5. Where a proposed tenant of a building places machinery therein and pledges the same to the owner of the building for cost of alterations to be made by such owner, but no lease is actually made, and thereafter the pledgor sells the machinery to another, the pledgee, by merely issuing a landlord's warrant, does not waive his right as a pledgee, where the warrant was based on no lease and abandoned before any effective steps were taken under it.

Argued May 8, 1923. Appeal, No. 320, Jan. T., 1923, by plaintiff, from judgment of C. P. Northumberland Co., Feb. T., 1920, No. 78, on verdict for defendant, in case of J. H. & C. K. Eagle, Inc., v. Charles A. Kunkle. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Replevin for machinery. Before STROUSS, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant for $5,600. Plaintiff appealed.

1923.]     Assignment of Errors—Opinion of the Court.

*Errors assigned* were various rulings and instructions, quoting record.

*Charles C. Lark,* for appellant.—Possession means simply the owning or having a thing in one's power: Llewellyn v. Cauffiel, 215 Pa. 23.

A pledge is not binding on a purchaser from the pledgor for value and without notice: Boyle v. Rankin, 22 Pa. 168; Collins' App., 107 Pa. 590; Davis v. Billings, 254 Pa. 574, 581; Colonial Trust Company v. Trust Co., 243 Pa. 268.

In his affidavit of defense, Kunkle claimed to hold these machines under two separate and distinct liens. First, an alleged pledge, and second, under his landlord's levy. We contended upon trial, and now contend, that even if he had a pledge, he abandoned it when he issued his landlord's warrant and is now estopped from setting up the pledge: Edwards's App., 105 Pa. 103; Reynolds v. Cridge, 131 Pa. 189; Garber v. Doersom, 117 Pa. 162; Donnelly v. Pub. Ser. Com., 268 Pa. 345; Fernwood Masonic Hall Assn. v. Jones, 102 Pa. 307; Williams v. Smith, 153 Pa. 462.

*J. Fred Schaffer,* with him *W. H. Unger,* for appellee, cited, as to abandonment of lien by pledgee: Murphy v. Chase, 103 Pa. 260; Ramsdell v. Seybert, 27 Pa. Superior Ct. 133; McKean v. Wagenblast, 2 Grant 462; Penn's Warehousing Co. v. Painter, 19 Phila. 275; Canadian Bank v. Baum, 187 Pa. 48; Baugh v. Kirkpatrick, 54 Pa. 84; Richardson v. Nathan, 167 Pa. 513; Hawley v. Hampton, 160 Pa. 18; Finney's App., 59 Pa. 398.

OPINION BY MR. JUSTICE KEPHART, June 23, 1923:

Appellee owned a building which appellant's vendor wished to have remodeled into a manufacturing plant. This would require extensive repairs which appellee was unwilling to undertake, unless the cost of the improvement was guaranteed to him in some way. No lease

had been executed between the parties, and, to indemnify appellee, appellant's vendor, Bosetti, turned over, as security, the machinery and property to be placed in the building for the cost of remodeling it. The pledge was to continue pending the actual execution of the lease and occupancy of the premises thereunder as tenant, or until the cost was paid.

Bosetti declined to accept the lease thereafter tendered, as he was not certain whether the business was to be conducted by a corporation, a firm, or an individual. Before the question of lease was finally decided, he sold the machinery to plaintiff, who instituted this action of replevin, in which appellee recovered the cost of the repairs as damages. From judgment thereon this appeal is taken.

Appellant contends it had no notice of the pledge. A bailor may sell the subject-matter of the bailment, subject to the special property in the bailee; if, by agreement, the subject-matter is to remain in the pledgor's possession, it binds all claiming under him, except purchasers without notice: Collins's App., 107 Pa. 590, 605. But where, as here, there is possession of the pledged property, an implication of notice arises. The evidence was sufficient, if believed by the jury, to show implied knowledge. The appellee claimed dominion over the property; his status could be ascertained by inquiry, which appellant was bound to make if it wanted to be advised.

. Appellant asserts, as the negotiations contemplated a lease, it should be considered in fact made, and under these circumstances there could be no pledge. This is not in accordance with appellee's theory or the facts of the case. The vendor negatived any such idea when he sold the property to a stranger, who immediately instituted replevin. The negotiation at best was but an agreement for a lease to be reduced to writing, when the other party to the contract was known: Sausser v. Stein-

metz, 88 Pa. 324.   Meanwhile, the property was under bailment for the expense incurred.

Appellee issued a landlord's warrant to seize the property on pledge in his possession.   He did not, under the facts, waive his rights as a pledgee, and should not be held solely to the lien of the warrant.   He may claim the property pledged against a purchaser for value from the bailor.   Appellant's contention in opposition is an erroneous conception of the law, due to a misapplication of the governing legal principles to the facts in the case.

Dix v. Smith, 50 L. R. A. 714, with like cases, is authority for the principle that in states where chattel mortgages or such instruments exist, title under the common law is transferred to the mortgagee.   There is either no right of redemption or none that will be recognized as subject to an attachment.   So, where a creditor sues out the latter writ to attach personal property covered by a chattel mortgage, and thereafter purchases the mortgage, inasmuch as the title by law is then vested in him, the two liens are inconsistent, and the lien of the mortgage is ordinarily lost.   Where a pledgee institutes suit at law to recover judgment for the same debt, and attaches the pledged property, he abandons his pledgee's right, and is estopped from asserting any other than a lien by attachment: Citizens Bank of Greenfield v. Dows & Co., 68 Iowa 460; and see also Valley National Bank v. Jackaway, 80 Iowa 512, and cases cited.   It is stated the effect of an attachment is to put the goods in custody of law, thus placing the property out of the control of the mortgagee: 2 Cobbey, Chat. Mortgages, section 746, page 954.

Other authorities hold such proceeding, where mortgages exist, to be but an admission inconsistent with the mortgage title, which may be used at trial as an expression of intention to find the creditor meant to release his prior lien.   See notes to Dix v. Smith, supra, 714, et seq.

But, where the right of redemption remains in the mortgagor as a distinct right of property, subject to exe-

cution, there is no inconsistency between the lien of the chattel mortgage and the lien of an attachment or other like writ for a different debt, though asserted by the same person.

In this State, we have no direct ruling on the question. Our cases cited by appellant relate to instances where the claim of property was, at one stage of the proceeding, for outright ownership, and, at another, in direct conflict, as a lien creditor. This dual attitude was not sustained. "They disclaimed all interest in any fund that might arise from the sale, in that they denied their tenant's title in the goods levied upon; for necessarily their claim must be limited to the proceeds of the sale of the goods of the tenant, and not to the proceeds of the sale of their own goods, which sale was a proceeding adverse to their alleged right......But it is urged that these landlords were not bound to make choice between these two claims; they might pursue both, and if one failed they might resort to the other. That is,......they might both affirm and deny their own title; claim under the writs or adversely to them; might hold the plaintiffs in those writs for the whole value of the property, or, failing in this, might nullify their own words and acts, and, as landlords, claim the fund as the product of their tenant's goods. To this we cannot agree......'If they lose their claim as landlords by attempting to play a double-handed game for the fund in court, no one is to blame for it but themselves'": Edwards' App., 105 Pa. 103, 108.

There may be little or no difference between a pledge and chattel mortgage in actual practice, and it may be legislation treats them as similar, to some extent. In a pledge, the general property remains with the pledgor; a special property passes to the pledgee. The title or general property of the pledgor will not be divested except by sale or an act equivalent thereto. To constitute a good pledge, there must be possession, actual or constructive. In a mortgage such possession is not an abso-

lute necessity, and the title passes to the mortgagee: Collins's App., supra, 605.

At common law, goods in pawn could not be taken in execution in an action against the pawnor as long as the pawnee's title was unextinguished, but a sheriff may sell subject to the rights of the pawnee, although he cannot seize the goods: Srodes v. Caven, 3 Watts 258, 259.

By sections 23 and 35 of the Act of June 16, 1836, P. L. 761, 765, 767, it is expressly provided the pledgor's right of redemption can be levied on and sold; such sale carries the right to the property subject to the interest of the pledgee, who may maintain trover or replevin where the property is wrongfully taken from his possession under execution: Reichenbach v. McKean, 95 Pa. 432, 434; Waverly Coal and Coke Co. v. McKennan, 110 Pa. 599, 605. Taking the pledge out of the pledgee's possession does not divest his title, and his surrender of it to the sheriff is in no sense a relinquishment of his lien; a sheriff's vendee takes subject to such lien: Reichenbach v. McKean, supra; Schouler on Bailments (ed. of 1905), section 186, page 102. By the act and at common law, execution is permitted against the redemption in favor of third persons; there is no reason for a different rule where the creditor in the execution is the same person as the pledgee of the property, where he seeks to collect an indebtedness different from that by which the property is held in pledge. In this case, on appellant's theory, there was an indebtedness due on a supposed lease, and a second liability incurred in remodeling the building. But as there really was no lease, the landlord's warrant was a nullity, abandoned before any effective steps were taken under it.

All the assignments of error not heretofore considered are without merit and are overruled.

The judgment is affirmed, at the cost of appellant.