## Osterling's Estate.

Argued October 8, 1936. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Oliver K. Eaton,* with him *J. M. Russell,* for appellants.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 23, 1936:

On November 19, 1928, F. J. Osterling entered into an agreement with the Peoples-Pittsburgh Trust Company (hereinafter referred to as the trustee), for the investment of certain moneys. He deposited with the trustee $134,543.55, the net income from which was to be paid to him during his life. The agreement provided that the trustee shall "invest, reinvest and keep the same [money] invested in such securities as are expressly authorized and sanctioned by the laws of the Commonwealth of Pennsylvania as investments to be made by

trustees, or at my [Osterling's] option, in such securities as I shall or may from time to time direct." It also provided: "Should I [Osterling] die during the continuance of the trust estate hereby created, the whole of the estate then held in trust shall go to the executor named in my last will and testament." Also, "that this trust shall continue until terminated upon fifteen days' notice given in writing by either of the parties hereto, and the trustee shall thereupon pay over, transfer and deliver unto me the said trust estate in cash for investments made by the trustee and in the securities directed by me where I have exercised my option so to do, together with any income in hand or accrued thereon."

Osterling died July 5, 1934, without having terminated the trust and on December 13, 1935, the executors under his will made demand upon the trustee for payment of the fund in cash. The trustee refused to do this and filed an account showing the balance was made up almost wholly of unconverted securities. Exceptions were filed on the ground that the fund was payable in cash. The auditing judge dismissed the exceptions and distributed the balance in kind, to which decree exceptions were filed.

The learned court below correctly found as follows: "The agreement contains two separate and complete methods of distribution of the corpus of the estate; one, upon the settlor's death, and the other, upon revocation by him. Having provided for payment of the income, the settlor then designated who should receive the corpus upon his death, but there is no requirement that the trustee pay this fund in cash. If it contained nothing more, the trustee could only be called upon to turn over the fund in kind: *Crick's Est.*, 315 Pa. 581 [173 A. 327]. The subsequent provision to pay in cash does not refer to the distribution after settlor's death, but only in the event he terminated the trust in his lifetime, which he did not do. The contract provides, in the event of termination, 'the trustee shall thereupon pay over, transfer,

and deliver unto me the said trust estate in cash for investments made by the trustee and in the securities directed by me where I have exercised my option so to do,' but no mention is made of his executors or administrators. The use of the singular pronoun applies only to the settlor, and there is nothing to indicate that it was the intention of the parties that it should be otherwise construed."

The court below rightly held that the executors were required to take in kind the corpus of the trust. There was nothing in the language of the agreement which required the trustee upon Osterling's death to turn over to the executors the amount of the cash the settlor, Osterling, originally placed in the trustee's hands for investment. Only unequivocal language could impose upon the trustee such a heavy and unusual obligation. In *Roberts's Trust Est.,* 316 Pa. 545, 175 A. 869, which was a case involving a trust agreement that required the trustee to invest, reinvest and keep invested certain moneys in legal investments for trust funds or in such securities as might be directed by the settlor from time to time, this court held that "the trustee was authorized to make any investment it chose, within the class known as legal investments. Its promise to repay has none of the elements of insurance, which, generally speaking, is a contract of indemnity against loss by the act of another."

The language of the agreement invoked here does not provide for the payment of the trust estate in cash upon the settlor's death, but provides that upon his death "the whole of the estate then held in trust shall go to the executor named in his last will and testament." It is clear from this language that the trustee discharged its entire duty when it turned over to the executors *whatever estate* it held in trust at the time Osterling died.

The decree is affirmed at appellants' cost.