## Lacy's Trust Estate.

224

Argued March 27, 1941. Before MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. W. Stoner,* of *J. M. Stoner & Sons,* for appellant.

*Howard Zacharias,* with him *James R. Orr,* for appellee.

OPINION BY MR. JUSTICE LINN, April 14, 1941:

In 1922, at the audit of the account of his guardian, appellant became entitled to receive $21,406.99, then composed of seven first mortgages aggregating $20,500 and cash for the balance. By an agreement dated June

6, 1922, he assigned and transferred the property to the appellee, Potter Title & Trust Company, in trust to invest and reinvest and pay the net income as stated in the deed quoted in the margin.[1] The fifteen-year period elapsed. The trustee filed its account. The parties differed on the meaning of the deed, particularly of paragraph 4: "At the end of fifteen years to pay to me the principal sum in its hands, either in cash or se-

curities, as I may elect." The appellant contended that the deed required the payment of $21,406.99, the face value of the mortgages and cash at the time the deed was made. The trustee[2] contended that the deed meant the present value in cash or securities as appellant might elect, and not the face value of the property originally received. The learned court adopted the trustee's view.

The agreement is a simple trust deed transferring certain property in trust to invest and reinvest "in first lien mortgages," and to pay the net income to the beneficiaries. The trustee was expressly authorized to retain the mortgages originally delivered. The duties of a trustee in such circumstances are well understood; he will not be surcharged for loss if he has exercised common skill, prudence and caution: *Drueding v. Tradesmens Bank & Trust Co.*, 319 Pa. 144, 147, 179 A. 229; Restatement, Trusts (1935), § 174.

It appears that in consequence of the general decline in property values, the trust property cannot, at the present time, be converted into cash in amount equal to the face value of the property in 1922. In effect, therefore, appellant's claim is one of surcharge. There is no evidence that the shrinkage in market value resulted from any failure by the trustee to perform its duty according to the recognized standard. Appellant refers to cases as suggesting support for his contention. There have been cases dealing with trust agreements, of this general character, in which the trustee expressly guaranteed repayment of "the principal sum" and containing other words from which the court found an obligation to repay the face amount of the property originally transferred: *Tophan v. Potter Title & Trust*

---

[2] The trustee's agreement appeared at the foot of the deed in the following paragraph: "I, POTTER TITLE & TRUST COMPANY, Trustee named in the foregoing Trust Agreement, do hereby accept said Trust under the terms and conditions above provided."

*Co.,* 324 Pa. 140, 188 A. 299;[3] compare *Cunningham's Estate,* 328 Pa. 107, 195 A. 130; *Fortna v. Com. Trust Co.,* 341 Pa. 138; see also *Osterling v. Com. Trust Co.,* 320 Pa. 67, 181 A. 769. In those cases the value of the original deposit was set forth in the agreement and it appeared from the provisions of the agreement taken as a whole that the "principal fund" to be repaid referred back to this stated amount. In the deed before us, however, aside from other distinctions, it will be observed that the value of the securities originally deposited does not even appear in the writing. There have also been cases in which the court accepted the interpretation of the parties as shown by their conduct: compare *Roberts' Trust Estate,* 316 Pa. 545, 175 A. 869; *Kefover v. Potter etc. Co.,* 320 Pa. 51, 181 A. 771; *Osterling v. Com. Trust Co.,* 320 Pa. 67, 181 A. 769. Those decisions, therefore, do not aid appellant.

In this deed there is no guarantee that, in all circumstances, the trustee shall repay the original value of the property; paragraph 4 does not enlarge the obligation to exercise the measure of care imposed on a trustee by the law. The paragraph gave the beneficiary a privilege he would not otherwise have had, that is, the right, instead of taking the corpus in kind, to have the trustee convert it into cash. See Restatement, Trusts, section 347, comment d. If the agreement of the parties had been that in addition to the ordinary obligation the trustee must so administer the trust as to insure repayment of the value of the corpus at the time of its original transfer to the trustee, the agreement should have made specific provision for that additional obligation. Compare *Crick's Estate,* 315 Pa. 581, 173 A. 327; *Osterling's Estate,* 324 Pa. 167, 188 A. 180; *Cohen v.*

---

[3] The opinion of the court below in that case, which was adopted on appeal, contained provisions similar to paragraphs first and second quoted in *Cunningham's Estate,* 328 Pa. at p. 109, 195 A. 130.

228

*Miners Bank of Wilkes-Barre,* 337 Pa. 388, 10 A. 2d 392. The result is that its obligation was to exercise common skill and prudence and that no evidence of breach of that obligation has been produced.

Decree affirmed at appellant's costs.

Mr. Chief Justice SCHAFFER did not participate in the decision of this case.